IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

COINSTAR, INC.,

           Plaintiff-Counterclaim Defendant,

    v.

COIN X CHANGE, LLC,
          Defendant-Counterclaim Plaintiff-
          Third Party Plaintiff,

    v.

CUMMINS-ALLISON CORPORATION,
          Third Party Defendant.

Civil Action Number 3:06CV299

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Third Party Defendant, Cummins-Allison's ("Cummins") Motion for Summary Judgment on Counts I–III of Defendant, Coin X Change's Third-Party Complaint. For the reasons stated below, Cummins's Motion for Summary Judgment is hereby GRANTED.

### Background

Plaintiff, Coinstar places consumer coin counting machines in retail environments. On May 2, 2006, Plaintiff filed a Complaint alleging that certain coin counting machines installed by Coin X Change infringed four patents owned by Coinstar, U.S. Patent Nos. 7,028,827, 6,976,570,

6,349,972, and 6,116,402 (collectively "the Coinstar patents").  Defendant notified Cummins that the accused machines had been purchased by Cummins.  Defendant subsequently filed a Third-Party Complaint against Cummins, alleging that Cummins must indemnify Defendant for any legal expenses related to the lawsuit and any damages awarded to Coinstar.

Cummins sold ninety-five (95) counting machines to Defendant in 2004 and 2005.  The machines were sold pursuant to separate sales agreements, containing the disputed "Terms and Conditions of Sale." ((Third Party Def. Mem. Support of Mot. for Summ. J. Ex. 5) (hereinafter "Ex. 5")).  Cummins made certain express warranties with respect to the Equipment sold to Coin X Change. (Ex. 5, ¶ 6).  Cummins also made express warranties with respect to the Software sold to Coin X Change. (Ex. 5, ¶ 7).  Paragraph 8 of the Terms and Conditions of Sale is titled "Disclaimer and Limitation of Liability."  In it, Cummins disclaims any other express or implied warranties. (Ex. 5, ¶ 8).

Cummins claims it has no obligation to indemnify Coin X Change based on ¶ 11 of the Terms and Conditions of Sale.  Paragraph 11 provides the contractual obligations and responsibilities of the parties with respect to patent, trademark, or copyright infringement:

> SELLER will defend and settle, at its own expense, any claim or suit against BUYER alleging any Equipment or Software sold or licensed by SELLER in the form delivered (but not the use thereof) infringe any U.S. patent, trademark or copyright and pay all damages assessed by final judgment against BUYER due to such infringement, provided, however, that BUYER notifies SELLER promptly in writing of any claims, provides SELLER sole control of the defenses, cooperates with SELLER and permits SELLER to replace or modify the Equipment or Software to become noninfringing.  SELLER may, at its option, refund the purchase price less a reasonable allowance for BUYER's use.  This section states the entire liability of SELLER for infringement by the Equipment or Software.

Ex. 5, ¶ 11.

In its Third-Party Amended Complaint, Coin X Change pleads three counts against Cummins: 1) that Cummins must indemnify Coin X Change against Coinstar's infringement allegations; 2) that Cummins has breached its contract with Coin X Change by failing to defend and settle the lawsuit with Coinstar; and 3) that Cummins has breached express contractual warranties and implied warranties under § 2-312 of the Uniform Commercial Code.  The Court has granted Cummins's Motion for Summary Judgment as to Count III, based on the validity of the warranty disclaimers in Paragraph 8 of the Terms and Conditions of Sale.  The Court now grants Cummins's motion as to the two remaining counts.

### Standard of Review

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. See Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).  If the moving party would not bear the burden of proof at trial, its initial burden is met by "pointing out" that the nonmoving party has not made a sufficient showing on an essential element of its case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).  If the moving party would bear the burden of proof at trial, it discharges its initial burden by offering evidence that, if undisputed,  would entitle it to judgment. Brinkley v. Harbour Rec. Club, 180 F.3d 598, 614 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. Celotex, 477 U.S. at 323–25 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)).

## Choice of Law

Illinois contract law controls interpretation of the indemnification clause at issue.  The Terms and Conditions of the sales agreements state "[t]his Agreement shall be construed in accordance with the laws of the State of Illinois as a contract made to be performed in that State." (Ex. 5, ¶ 13). "A contract term is ambiguous if it can be reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324, 335 (Ill. App. Ct. 2005).  However, if the contract is unambiguous, the parties' intent must be determined from the language of the contract as a matter of law.  CSX Transp. v. Chicago and N. W. Transp. Co., 62 F.3d 185, 189 (7th Cir. 1991).  If the language unambiguously answers the question at issue, the inquiry is over.  Church v. Gen. Motors Corp., 74 F.3d 795, 799 (7th Cir. 1996).  Under Illinois law, indemnity provisions are to be construed strictly and narrowly.  Moriarty v. Hills Funeral Home, Ltd., 221 F. Supp. 2d 887, 896 (N.D. Ill. 2002) (citing McNiff v. Millard Maint. Svc. Co., 715 N.E.2d 247, 249 (Ill. 1999)).

## Analysis

**A**.     **The allegedly infringing activity performed by Coin X Change is within the "use" exclusion of the indemnification clause.**

Under the patent statute, there are specific activities that may constitute infringement.   It states,

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271 (a) (2003).

4

The parties agree that the indemnification clause excludes any infringement allegations based on the "use" of the Cummins machines. The clause clearly states that Cummins will defend any suit against Coin X Change alleging infringement of its products in the form delivered, "but not the use thereof." (Ex. 5, ¶ 11).

Cummins contends that the patent infringement claims against Coin X Change fall clearly within Pargraph 11's "use" exclusion, and therefore it is not legally obligated to indemnify Coin X Change. Coin X Change's responses to the contrary are unconvincing, and do not raise a genuine issue of material fact.

First, Coin X Change alleges that Coinstar's Complaint alleged infringement based on more than just "use." It contends that it is possible for Coinstar to contend that Coin X Change's installation and service of machines amounted to "making" and "selling" the allegedly infringing machines, rather than using them, thus including it in coverage under the indemnification clause. Coinstar has clarified its allegations against Coin X Change, and has contended Coin X Change infringes the Coinstar patents only by using or inducing its customers to use consumer coin counting machines in retail locations. Thus, it is undisputed that Coinstar's allegation is limited to "use."

Second, Coin X Change contends its activities are not "use" within the meaning of the indemnification clause or the asserted patents. However, this contention is unsupported by the facts. Coin X Change admits its machines are for "use" by the retailers and customers. (Coin X Change Resp. to Mot for Summ. J. at 11). The retailers' and customers' use does not preclude Coin X Change from being liable for indirect infringement, because it installs the machines to induce their use in a manner that Coinstar alleges to be infringing. It is immaterial whether the alleged infringement is direct or indirect, as Coinstar must ultimately prove that someone is directly

infringing a claim through use.  In addition to asserting its machines are used by retailers and customers, Coin X Change notably does not assert that it makes, sells, offers for sale, or imports the accused counting machines.

Since the language of the indemnification clause unambiguously excludes any coverage for Coinstar's allegations of patent infringement, Cummins's motion for summary judgment with respect to Counts I and II of Coin X Change's Third Party Complaint is hereby granted.

**B.    Cummins is entitled to summary judgment on the issue of whether Coin X Change has met the conditions precedent required by the indemnification clause.**

Although the Court need not reach this question, the parties may benefit from a brief discussion of whether Coin X Change has met the conditions precedent of the indemnification clause.  The indemnification clause between the parties takes effect if the parties meet certain conditions precedent.  "Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform."  Hardin, Rodriguez & Boivin Anesths., Ltd. v. Paradigm Ins. Co., 962 F.2d 628, 633 (7th Cir. 1992).

The first condition required by the indemnification clause is that the buyer notify the seller promptly in writing of any claim.  It is undisputed that Coin X Change has satisfied this condition, by promptly notifying Cummins of Coinstar's allegations against Coin X Change.

Second, the indemnification clause states Coin X Change will provide Cummins with sole control of the defense, cooperate with Cummins, and permit Cummins to replace or modify the Equipment or Software to become noninfringing.  Cummins contends that Coin X Change has failed

to satisfy this condition.  Cummins  asserts that it has sought Coin X Change's cooperation to make two modifications to the machines, to make them non-infringing.  Coin X Change has refused both of them.  First, Cummins requested that Coin X Change "re-locate those kiosks within stores . . . so that the receipts printed out by the machines in those kiosks are directly accessible only to a store employee," preventing Coinstar from arguing the vouchers are "redeemable vouchers." (Third Party Def. Mem. in Support of Mot. for Summ. J. Ex. 6).  Second, Cummins requested that Coin X Change "disable the remote communications feature of the kiosks so that Coinstar cannot argue that the kiosks contain a 'communications facility.'" (Third Party Def. Mem. in Support of Mot. for Summ. J. Ex. 7).

Coin X Change has objected to the form of Cummins's request, stating that it would cause Coin X Change to breach its current contracts with the retailers, thereby vitiating the very reason Coin X Change purchased the machines. (Third Party Def. Mem. in Support of Mot. for Summ. J. Ex. 8). Coin X Change further asserts Cummins's proposals are not modifications, since they would alter the primary functions of the machines.  Coin X Change suggests a strained reading of the contract, to limit modifications to not interfere with its business.  Despite Coin X Change's vigorous objections to the contrary, the unambiguous language of the contract obligates Coin X Change to cooperate with Cummins and permit it to replace or modify the machines to become noninfringing. There is no limitation written into the contract on the degree of modification, as long as it renders the equipment or software to become noninfringing.

Coin X Change further contends the modifications proposed by Cummins raise questions of fact as to whether the proposed modifications would be non-infringing.  This too has been rendered moot, as Coinstar has represented in its response brief and at the hearing that the requested

modifications would render the accused machines non-infringing.  By failing to satisfy the condition precedent set forth in the indemnification clause permitting Cummins to render the machines noninfringing, Coin X Change is deprived of any entitlement to indemnification from Cummins.

**C.     There is no genuine dispute as to whether Cummins has exercised its right to refund the purchase price of the machines purchased by Coin X Change.**

The indemnification clause states that Cummins may, at its option, refund the purchase price less a reasonable allowance for Coin X Change's use. (Ex. 5, ¶ 11).  Cummins has offered to refund the purchase price, less a reasonable allowance, which Coin X Change has refused.  Cummins contends that Coin X Change's refusal to accept Cummins's repurchase offer amounts to a breach of the agreement under the indemnity clause.  Cummins offered to repurchase the machines, and would require Coin X Change to return the machines.  Coin X Change contends that Cummins has misinterpreted the refund provision, stating there is no express language requiring return of the machines, nor could any requirement reasonably be inferred.

Coin X Change suggests an interpretation of the term "refund," that would render the refund provision of the contract illogical.  First, as is commonplace in the retail industry, refunds require a return of the product.  Second, since the contract provides a reasonable allowance to Coin X Change for its use, it is impossible to imagine how Coin X Change would be able to maintain possession of the machines and still be reimbursed for the price of the machines less an allowance for use.

Coin X Change protests that returning the machines would force it to breach all of its existing contractual relations based on the claim of alleged infringement.  Regardless of the effect on Coin

8

X Change's other contracts, the terms of the binding agreement between the parties are clear, and give Cummins the option to refund the purchase price less a reasonable allowance.  Coin X Change's refusal to accept Cummins's refund offer is a breach of the condition precedent of the indemnity clause.

**Conclusion**

For the foregoing reasons, the Court hereby GRANTS summary judgment in favor of Cummins with respect to Counts I and II of Coin X Change's Third Party Complaint. Coin X Change's Third Party Complaint is DISMISSED in its entirety.  An appropriate Order shall issue.


_____/s/   James R. Spencer_____
CHIEF UNITED STATES DISTRICT JUDGE


ENTERED this __28th__ day of July 2006

9